**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Derrick TABOR, Defendant-Appellant.**

**No. 46744.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 19, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 1, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Henry Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Sandra K. Stratton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

A jury found appellant guilty of forcible rape with a deadly weapon, § 566.030 RSMo.1978, and first degree robbery, § 569.020 RSMo.1978. He appeals from the trial court's judgment of conviction and consecutive sentences of life imprisonment for the forcible rape and fifteen years for the robbery. The judgment is affirmed.

Appellant has briefed five points relied on. He maintains the trial court erred in: (1) failing to excuse a venirewoman who objected to appellant's being able to see the addresses of the members of the jury panel; (2) denying his motion to substitute an alternate juror for a juror who dozed off during the taking of testimony; (3) admitting evidence of medical records which the state offered in rebuttal; (4) overruling appellant's objection to the prosecutor's alleged attempt during closing argument to define reasonable doubt; and (5) failing to use the court's authority to curb the prosecutor in closing argument.

The evidence favorable to the verdict disclosed that at approximately 5:00 a.m. on January 16, 1981, appellant approached the victim at a bus stop and engaged her in conversation. When the victim told appellant her children were aged four and one, appellant replied that if she wanted them to live to be five and two, "Don't holler." He then pulled out a gun and forced the victim to take him to her house. When they reached her house he changed his mind about going in and led her to a vacant house on another street.

Appellant then forced the victim to disrobe at gunpoint and raped her twice. Between the two rapes, appellant forcibly removed the victim's engagement ring from her mouth where she had hidden it while she was disrobing.

After the rapes appellant told the victim that they were returning to her house so that he could rape her mother and sister. When they reached her house, appellant abandoned his announced intention to rape the other women and fled.

From the time he accosted her until he left the victim at her house and ran away, appellant continually threatened her with the gun by saying, "If you holler, I'll shoot you," and by threatening to shoot her in the head. It was 6:00 a.m. or a little after when they returned to the victim's house.

The victim positively identified appellant at a lineup and in court, but he relied on the defense of alibi. He took the stand and testified that he was asleep with his girl friend at the house of his girl friend's sister at the time of the offense. Both the girl friend and the sister testified that he was at the sister's house the entire morning of the day when the rapes occurred.

The jury found him guilty of both the forcible rape with a deadly weapon and the robbery charges and he was sentenced accordingly.

In appellant's first point relied on he insists that the trial court abused its discretion by denying his challenge for cause of venirewoman Wagner because she allegedly confessed the existence of bias against appellant when she objected to his being able to see the addresses of the jurors. The point has no merit.

During the voir dire examination venirewoman Wagner expressed concern to the judge that appellant was taking notes on the addresses of potential jurors. Appellant, believing that venirewoman Wagner was prejudging his guilt, moved to strike her for cause. The motion was never ruled upon or renewed, but in subsequent interrogation the following questions, among others, were asked and answered:

Defendant's Attorney: "All right. I just wonder why you had a concern about it."

Venirewoman Wagner: "I would not think that a person that is being tried should be able to look at the names and addresses of the people who are going to be looking at the evidence."

Defendant's Attorney: "Do you think that because he is on trial here that he is probably guilty of something?"

Venirewoman Wagner: "I don't know he is guilty. I have not heard any evidence yet."

Defendant's Attorney: "Do you think there is something about his character that he would use those names and addresses in some way?"

Venirewoman Wagner: "I don't know."

A defendant in a criminal case has the right to a full panel of qualified jurors prior to exercising his peremptory challenges. *State v. Morrison,* 557 S.W.2d 445, 446[1] (Mo. banc 1977); *State v. Pride,* 567 S.W.2d 426, 432[8] (Mo.App.1978). The fundamental purpose of the voir dire examination is to determine whether each individual "would be fair and impartial if chosen as a juror." *State v. Harris,* 425 S.W.2d 148, 155[8] (Mo.1968).

The trial court is accorded wide discretion in ruling on challenges for cause, and will be overturned only for abuse in the exercise of that discretion. *State v. Treadway,* 558 S.W.2d 646, 649[1, 2] (Mo. banc 1977) *cert. denied* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978) overruled on other grounds, *Sours v. State,* 593 S.W.2d 208, 210[1] (Mo. banc 1980); *State v. Cuckovich,* 485 S.W.2d 16, 22[11] (Mo. banc 1972).

There was no abuse of discretion in the trial court's refusal to strike venirewoman Wagner for cause. Defense counsel interpreted venirewoman Wagner's objection to the taking of notes by appellant as prejudice against appellant. Interrogation disclosed that she was merely objecting in general to the disclosure of the names and addresses of prospective jurors to a defendant in a criminal trial. Her answers to other questions are evidence of her lack of prejudice. It cannot be said that the trial court abused its broad discretion in refusing to strike venirewoman Wagner for cause. *State v. Treadway, supra.*

The cases relied on by appellant in support of his claim of error, *State v. Lovell,* 506 S.W.2d 441 (Mo. banc 1974) and *State v. DeClue,* 400 S.W.2d 50 (Mo.1966), are distinguishable because in those cases there was strong evidence of prejudice on the part of the challenged prospective jurors.

In his second point relied on appellant charges the trial court erred in failing to substitute an alternate juror for a juror who dozed off during the taking of testimony. The point is denied.

During a recess in the course of the trial, appellant moved that juror no. 6 be replaced by an alternate juror because the former had appeared to be asleep and had been wakened by the sheriff. The court denied the motion, stating that even if juror no. 6 had been asleep, it had been only momentarily because the judge had observed the members of the jury just before the sheriff aroused juror no. 6, and none of the jurors had been asleep at that time. The court further observed that upon being wakened, juror no. 6 had immediately given his attention to the proceedings.

■ Although there is no Missouri case specifically addressing the problem of a sleeping juror, there are cases dealing with juror misconduct which state that a trial court's response to alleged misconduct lies within its sound discretion. *State v. Edmondson,* 461 S.W.2d 713, 724[6] (Mo.1971); *State v. Robinson,* 595 S.W.2d 9, 13[7–10] (Mo.App.1979). In order to prevail with a claim of juror misconduct one must show that the complained of conduct was prejudicial. *State v. Edmondson,* 461 S.W.2d at 724. The trial court determined that the lapse of attention on the part of juror no. 6 was momentary and therefore, not prejudicial. Appellant has shown no prejudice. There was no abuse of discretion on the part of the trial court in denying appellant's motion to substitute the alternate.

Next appellant asserts the trial court erred by admitting evidence of medical records as rebuttal to the alibi evidence of a pregnant defense witness, appellant's girl friend Beulah or Brulah Henderson. This point, too, has no merit.

Beulah Henderson was appellant's principal alibi witness. She testified that appellant was with her from the afternoon of Wednesday, January 14 through the evening of Friday, January 16, 1981, giving as the reason for his constant attention her false labor pains every day for three weeks up to and including January 17. She was pregnant with appellant's child. Ms. Henderson also testified that she had made complaints to her doctor about these problems.

The state presented evidence of the medical records of Ms. Henderson's pre-natal care in rebuttal. An entry on January 19 stated, "Without complaints, no contractions."

■ Evidence that explains, counteracts, repeals or disproves the evidence offered by the defendant, whether directly or by implication, is proper rebuttal. *State v. Cameron,* 604 S.W.2d 653, 658[9–11] (Mo. App.1980). An appellate court will not reverse a case on the ground of improper rebuttal unless there is a clear abuse of discretion or the appellant's rights are prejudicially affected. *State v. Williams,* 442 S.W.2d 61, 65[7–9] (Mo. banc 1968), overruled on other grounds, *State v. Ayers,* 470 S.W.2d 534, 538 (Mo. banc 1971); *State v. Johnson,* 586 S.W.2d 437, 441–442[8–10] (Mo.App.1979).

The medical records evidence of Ms. Henderson's pre-natal care tended to counteract and disprove the alibi evidence offered by Ms. Henderson. The rebuttal evidence was proper. There was no abuse of discretion in permitting it to be placed before the jury.

Appellant complains in his fourth point relied on that the trial court erred in overruling his objection to what he described as the prosecutor's attempts to define reasonable doubt during closing argument. The point is denied.

■ The first argument by prosecutor, which was objected to by appellant, was, "The mere fact that one witness in a case testified differently than another witness does not in and of itself create a reasonable

doubt." The court overruled the objection. There was no objection to what appellant terms as the second attempt by the prosecutor to define reasonable doubt.

The prosecutor's arguments were not an impermissible attempt to define reasonable doubt. An extended discussion of this point would have no precedential value and it is denied in compliance with Rule 84.16(b).

In appellant's fifth and final point relied on he insists that the trial court erred in failing to use its authority to curb the allegedly improper remarks of the prosecutor during closing argument. He seeks a review of this point as plain error. Rule 30.20. " 'The seriousness of error in any given argument depends on all the circumstances of the particular case. Whether the error was so serious as to result in prejudice not remedial by anything short of a mistrial rests basically in the sound discretion of the trial court, who was physically present and who could better evaluate . . .' the prejudicial impact on the jury." *State v. Strubberg,* 616 S.W.2d 809, 818[18, 19] (Mo. banc 1981), quoting *State v. Jasper,* 521 S.W.2d 182, 185[2] (Mo.App.1975). An appellate court will not reverse unless there has been an abuse of discretion. *State v. Taylor,* 508 S.W.2d 506, 514[15] (Mo.App.1974).

This court has reviewed the prosecutor's closing argument in its entirety with particular attention to those portions emphasized by appellant in his brief. The trial court did not commit plain error in failing to declare sua sponte a mistrial because of the closing argument. There was no manifest injustice or miscarriage of justice under the plain error rule.

The judgment is affirmed.

DOWD and GAERTNER, JJ., concur.