Ronald E. JOHNSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 56243.

Missouri Court of Appeals, Western District.

Sept. 21, 1999.

**132**

Susan L. Hogan, Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for Respondent.

Before: HOWARD, P.J., and ULRICH and SMART, JJ.

VICTOR C. HOWARD, Presiding Judge.

Ronald E. Johnson appeals from the motion court's denial of his Rule 29.15 motion without an evidentiary hearing.

We reverse and remand.

### Facts

The facts presented in the light most favorable to the verdict are as follows. Johnson's charges of murder and armed criminal action arose from an incident on March 21, 1995 when gunmen fatally shot George Burgin on the street outside 2656 Lockridge in Kansas City, Missouri. One of those gunmen, Windell Ross, testified that on March 21, 1995, Johnson arrived in a 1991 Lincoln Continental at Restart, a homeless shelter, where Ross lived. He picked up Ross and drove to 27th and Prospect to find George Burgin. En route, Johnson said he was angry with Burgin and was going to "get him." Johnson showed Ross two handguns: a .38 caliber and a 9 millimeter. When they arrived, Johnson asked Ross to check if Burgin was in the area. Ross got out of the Lincoln, and Johnson drove off. Later, Johnson returned and Ross got back in the car. After they circled the neighborhood, Ross left the car again, walked south on Prospect toward 27th Street, and met with Burgin.

Johnson drove east on 26th, and when he spotted Ross talking to Burgin, he parked at the corner of 27th and Prospect and walked across the street. Johnson and Ross walked away from Burgin, and Ross bought crack cocaine from Johnson. Johnson asked Ross to lure Burgin around to Lockridge. Ross then asked Burgin to smoke crack with him around the corner.

While Ross and Burgin walked down Lockridge, Johnson pulled up, parked, and walked toward them. Simultaneously, Ross and Burgin walked toward Johnson, and Johnson fired the .38 caliber revolver. While he fired, he continued to walk toward Burgin.

After Johnson emptied the .38, he yelled for Ross to grab the 9 millimeter from the car, which Ross did. Then Johnson said, "Shoot him." Ross shot one round. Johnson then grabbed the 9 millimeter and tried to fire it, but no bullets remained in the pistol. Johnson then grabbed the .38 and beat the victim with it. Burgin said, "I'll die. I'll die." Johnson remarked, "I want to make sure he's dead." Johnson wanted to put Burgin's body into the Lincoln's trunk, but the police arrived when Ross was dragging Burgin's body toward the car. The officers had responded to a citizen's report that he had heard shots in the Lockridge–Benton area.

The police officers saw Johnson and Ross near Burgin's body. When the officers approached the two men, Ross fidget-

ed and drew his hands toward his waist. Ross ran, but the police apprehended him. While the officers chased Ross, Johnson walked away from the scene.

At the scene, the police found a 9 millimeter semi-automatic pistol lying in the grass next to Burgin. They also found a .38 caliber revolver next to Burgin's body, as well as a spent shell casing. Later, Ross testified that he and Johnson had dropped their weapons before fleeing.

Duncan Moten, who lived at 2649 Lockridge, testified that he heard gunshots and observed three men outside his window. He also heard arguing and a voice say, "Give me the gun. Give me the gun. Shoot him in the ass." He saw one man run from the scene and the other walk slowly toward Benton. However, he was unable to identify the men.

The evidence presented at trial indicated that Johnson owned the 1991 Lincoln Continental, and he listed 3300 Bellefontaine as his address when he applied for its title. Under a warrant to search that address, police found a box of 9 millimeter spent cartridges in a nightstand and two live rounds in a jewelry box. The box of 9 millimeter cartridges found at Johnson's residence were made by the same manufacturer as the 9 millimeter casing and the spent .38 Special cartridges in the revolver found at the scene.

A coroner testified that Burgin had died from thirteen gunshot wounds with extensive internal bleeding. Further, a firearms examiner identified the .38 or .357 caliber bullets from Burgin's body. Of the five .38 caliber bullets retrieved from Burgin's body, one was definitely fired from the weapon found at the scene. The other four bullets may have been fired from the weapon found at the scene, but this could not be determined due to damages to the projectiles.

The State filed an information on July 29, 1996, charging Johnson as a prior and persistent offender with one count of mur-

der in the first degree, § 565.020.1 RSMo 1994[1] and one count of armed criminal action, § 571.015. Following a jury trial, the jury convicted Johnson of both counts. The court sentenced Johnson to life in prison without probation or parole.

Johnson did not testify during the trial, but during the post-conviction hearing he denied killing Burgin. He claimed that three witnesses saw him enter a building for the purpose of shooting heroin prior to the murder, and at least two of those witnesses saw him exit the building after Burgin's murder.

This court affirmed Johnson's conviction and sentence on direct appeal. Johnson then filed a motion to vacate his conviction and sentence pursuant to Rule 29.15. The motion court denied Johnson's Rule 29.15 motion without an evidentiary hearing. This appeal followed.

### Argument

In his sole point on appeal, Johnson claims that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing, because he alleged facts not refuted by the record which, if proven to be true, would entitle him to relief. Johnson asserts that he was denied effective assistance of counsel and due process of law because his trial counsel failed to call three witnesses who could have established that he was not outside 2656 Lockridge when George Burgin was shot, but rather he was around the corner at a drug house getting high on heroin at the time of the shooting. Johnson further claims that his counsel was ineffective for failing to obtain and introduce medical records that would have shown that he suffered from heroin withdrawal after he was incarcerated.

■ Appellate review of the trial court's action on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clear-

1. All statutory references are to RSMo 1994.

134

ly erroneous. Rule 29.15(k); *State v. Starks,* 856 S.W.2d 334, 336 (Mo. banc 1993).

"To obtain an evidentiary hearing a movant must meet three requirements: (1) the motion must allege facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *Starks,* 856 S.W.2d at 336.

■ We first address Johnson's claim that his trial counsel was ineffective for failing to call the three witnesses: Anthony Green, Mac Witherspoon, and Edwin Hill. In his Rule 29.15 motion, Johnson claimed that the three witnesses would testify that he was in a nearby building, rather than at the crime scene, when Burgin was murdered. The facts alleged in Johnson's motion are not refuted by the files and records in this case. In addition, if these witnesses would have placed Johnson somewhere other than the crime scene, there is a substantial possibility that Johnson was prejudiced by his trial counsel not investigating, interviewing, and calling them to testify.

"An evidentiary hearing may reveal that defendant had not informed his counsel before trial of the alibi he now claims in his Rule 29.15 motion, or it may reveal that counsel had well-founded strategic reasons for not calling the alibi witnesses. Without an evidentiary hearing, however, with the court's findings thereon, we deal in speculation and conjecture. The record does not conclusively negate defendant's Rule 29.15 allegations." *State v. Sublett,* 887 S.W.2d 618, 622 (Mo.App. W.D.1994). Therefore, we find that Johnson is entitled to an evidentiary hearing on this allegation. The State concedes this.

■ Johnson further claims that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because he claims that his trial counsel was ineffective in failing to obtain

his medical records from the Jackson County Detention Center and failing to introduce those records at trial to establish that Johnson spent his entire first week at the detention center on the medical floor suffering from heroin withdrawal symptoms. We find that this argument is without merit. Records about Johnson's heroin withdrawal during his incarceration would not necessarily place Johnson away from the crime scene. Therefore, trial counsel's failure to obtain and introduce these records could not have prejudiced Johnson.

We reverse and remand for an evidentiary hearing on the Rule 29.15 motion allegation of ineffectiveness of counsel with reference to Johnson's alleged alibi defense. As to the allegation of ineffectiveness of counsel in failing to obtain and introduce Johnson's medical records showing that he was a heroin addict, we have already said there was no prejudice to Johnson, and no evidentiary hearing is needed on that allegation.

All concur.